**William Dufort PACK, Appellant,**

v.

**The STATE of Texas, State.**

No. 2–82–170–CR.

Court of Appeals of Texas, Fort Worth.

May 4, 1983.

---

Bankston & Lobingier and John R. Bankston, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and James J. Heinemann, Fort Worth, for State.

Before FENDER, C.J., and ASHWORTH and SPURLOCK, JJ.

## OPINION

ASHWORTH, Justice.

In a trial to the court, William Dufort Pack was convicted of kidnapping. After enhancement by virtue of a prior conviction for rape, his punishment was set at confinement in the Texas Department of Corrections for a period of nine years.

Judgment affirmed.

Bettye Sue Assiter testified she was alone in her Datsun automobile on the afternoon of April 3, 1981, traveling from Arlington, Texas, to Fort Worth, Texas, on Interstate Highway 30. As she was proceeding west in the right hand lane of traffic, Pack, driving a white truck, traveling west in the middle lane of traffic, started making hand and arm motions at her, apparently trying to indicate that something was wrong with her car. Assiter pulled over onto the shoulder of the road and stopped, and the truck stopped behind her. Pack told her that her rear wheels were wobbling severely, and checked the lug nuts which apparently were tight. He then told her that the problem might be her wheel bearings. Assiter then said that she would proceed on at a very slow rate of speed. Pack advised her not to do so because it might result in serious damage to her car, and volunteered to drive her to a telephone where she could call for help. Assiter got in Pack's truck and he drove her to a convenience store some distance down the road. She telephoned the Datsun dealer and was advised that there was no warranty covering the problem, and that she would have to pay the wrecker fee for transporting her car to the dealership which was on the west side of Fort Worth. Assiter testified she did not have the money to cover the expense and asked Pack to drive her back to her car so she could drive it slowly and carefully to her destination. Pack again advised against such procedure and told her that he had a friend who had a wrecker that might be used to tow her automobile. Pack ostensibly used the telephone at the convenience store and then reported to her that the wrecker could be used and they would go get it. They then left the highway and started traveling on back roads. Assiter stated they drove for a period of about two hours, engaging in conversation concerning Assiter's pending divorce and Pack's separation from his wife and three children. Assiter said she was becoming increasingly apprehensive because of the use of the back roads and apparently aimless travel. Pack stated that he needed to go to the rest room and stopped in an uninhabited area to do so. Assiter said she was afraid to try to run from him during this stop and did not have the presence of mind to see if the keys were left in the truck. Upon Pack's return to the truck, he produced a revolver and a pair of handcuffs from under the seat or from under a jacket in the seat. He pointed the revolver at Assiter, holding out the handcuffs in his

other hand, and said nothing. Assiter testified she said, "Bill, please don't kill me. Just tell me what you want," and that Pack still said nothing. Assiter again said, "Bill, please don't kill me. Just tell me what you want." Again, Pack made no response, but finally lowering the revolver and handcuffs, said, "Hold me." Assiter then slid over next to Pack and put her arm over Pack's shoulder in what she termed a comforting manner. Pack resumed driving over back roads, and Assiter stated she wanted to stop to get some cigarettes. Pack invited her to smoke his, as he had a carton in the truck. Assiter then suggested they go somewhere to get a cup of coffee and continue the discussion of their problems. Pack drove into the drive-through lane of a Whataburger stand in or near Mansfield, Texas. When he stopped, Assiter got out of the truck without giving him a chance to stop her, stating that she had to go to the rest room. She entered the Whataburger stand in a state of hysteria, advised the employees of her situation, and the police were called. Pack apparently remained in his truck on the premises a few minutes and then left. He was apprehended by the Mansfield police a short distance from the Whataburger stand. It was later established that the revolver in Pack's truck was fully loaded at the time he was apprehended, and that there was nothing wrong with Assiter's automobile.

Pack assigns five grounds of error:

1. Refusal to grant his motion for instructed verdict at the conclusion of the State's case in chief.

2. The evidence was insufficient to support a conviction of kidnapping.

3. The State failed to prove that Pack abducted Assiter, an essential element of the offense.

4. The State failed to prove Pack had the required culpable mental state with regard to the offense of kidnapping.

5. Pack should have been found guilty of the lesser included offense of attempted kidnapping.

As Pack's first four grounds are directed to the sufficiency of the evidence, they will be combined for consideration.

The offense of kidnapping is provided for by V.T.C.A. Penal Code, § 20.01 and § 20.-03. The portions of those sections pertinent to the instant case are as follows:

Section 20.01.

In this chapter:

(1) "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. Restraint is "without consent" if it is accomplished by:

(A) force, intimidation, or deception;
. . .

\* \* \* \* \* \*

(2) "Abduct" means to restrain a person with intent to prevent his liberation by:

(A) secreting or holding him in a place where he is not likely to be found; or

(B) using or threatening to use deadly force. . . .

\* \* \* \* \* \*

Section 20.03.

(a) A person commits an offense if he intentionally or knowingly abducts another person.

(b) It is an affirmative defense to prosecution under this section that:

(1) the abduction was not coupled with intent to use or to threaten to use deadly force; . . .

\* \* \* \* \* \*

When the sufficiency of the evidence is challenged, we must view the evidence in the light most favorable to the verdict. *Clark v. State,* 543 S.W.2d 125 (Tex.Cr.App. 1976). We must determine if the evidence in this case, considered in the light most favorable to the verdict, justified the trial court in finding, beyond a reasonable doubt, that Pack, intentionally or knowingly, restrained Assiter with intent to prevent her liberation by using or threatening to use deadly force. To justify its finding, the

trial court had to find the restraint of Assiter was a restriction of her movements by the use of force, intimidation, or deception, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her.

 Viewing the evidence in the light most favorable to the verdict, Assiter would never have had any association whatsoever with Pack had it not been for deception on his part. There was nothing wrong with her car, but in order to gain her company, he convinces her that there is. He insists that she not attempt to continue driving the car although she intends to do so. He does take her to a telephone where she unsuccessfully attempts to secure assistance. At this point, the deception by Pack continues; he ostensibly telephones an acquaintance about using a wrecker, says he has consent, and takes Assiter on a prolonged journey over back roads for a period of one to two hours. Assiter is becoming more and more apprehensive during this period. Pack parks in a secluded area to answer a call of nature, Assiter is afraid to attempt to flee during his absence. Pack returns to the truck, points a loaded pistol at Assiter with one hand, and holds a pair of handcuffs with the other. Assiter pleads that she not be killed, but Pack makes no response. Again she pleads that she not be killed, and again no response. Finally Pack says, "Hold me", and in an attempt to placate him until she can escape, Assiter complies. She is continually in fear of him until she is able to escape by use of a ruse, and is hysterical upon finally being freed from his control.

The trial court apparently made findings similar to those stated above, and was amply justified in doing so from the evidence admitted. Pack's grounds of error one through four are overruled.

Pack's fifth, and last, ground of error alleges that he should have been found guilty only of the lesser included offense of attempted kidnapping. We have held that the trial court was justified in its finding of guilty to kidnapping. No discussion of the fifth ground of error is necessary, and the same is overruled.

*The judgment is affirmed.*